## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| TIMOTHY M. REED, | ) | |
| | ) | No. 2:11-cv-00493-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CITY OF CHARLESTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's motion for summary judgment. For the reasons set forth below, the court grants the motion as to plaintiff's discrimination claim under 38 U.S.C. § 4311(a) but denies the motion as to plaintiff's unlawful discharge claim under 38 U.S.C. § 4316(c).

## I.  BACKGROUND

Plaintiff Timothy M. Reed filed this action in federal court on March 2, 2011 under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. § 4301 et seq. Reed alleges that defendant City of Charleston (City) discriminated against him upon his return from uniformed service and also constructively discharged him in violation of USERRA. Compl. ¶¶ 8-10. On March 5, 2012, City filed a motion for summary judgment.

Reed was hired as a City police officer in the Spring of 2000, at which time he was also a member of the United States Navy Reserve. Id. ¶ 3. He was deployed and took military leave three times from 2001 to 2005 during his employment with City. Pl.'s Resp. 2. After each of these deployments, Reed was reinstated as a police officer by City. Reed Dep. 47:1-7.

1

Reed received another order for deployment on December 31, 2008. Compl. ¶ 3. He submitted a leave request to City and anticipated that he would be deployed for one year. Def.'s Mot. Summ. J. Ex. E. In January 2009, Reed was sent to Fort Lewis Army Base in Washington State for training. Pl.'s Resp. 2-3. While in Washington, Reed was alleged to have committed misconduct. Id. at 3. The charges included pointing a firearm and yelling at fellow service members, pointing a knife and making threats to a fellow service member, disobeying an order by wearing the wrong type of boots, and making a derogatory statement about a female officer. See Def.'s Mot. Summ. J. Ex. J. Reed elected to have his charges reviewed at a Captain's Mast, which is a non-judicial proceeding (NJP).

During late January and early February 2009, City received notice from Reed and the Navy that Reed was the subject of an investigation. Reed contacted his Commanding Officer, Lt. Kevin Boyd, to discuss the rumors of a Navy investigation. Pl.'s Resp. 3-4. Lt. Boyd informed Reed that the Navy had already contacted City and informed it of the accusations against Reed. Id. at 4.[1] According to Reed, Lt. Boyd also informed him that information about the investigation had been taken up the chain of command, and that Chief of Police Gregory Mullen, along with others, was in fact informed of at least part of the accusations as early as February 2009. Id. Reed also contacted City's in-house legal counsel, Mark Bourdon, to discuss the allegations. Reed Dep. 127:19-21. Reed testified that he had telephone conversations with three other City officers during the January-February 2009 time frame. Id. at 144:15-44.

---

[1] Reed has filed a separate lawsuit against the Department of the Navy, alleging that the Navy violated the Privacy Act by revealing information about the investigation against Reed to City.

The Captain's Mast was held in March 2009.  Id. at 6:22-23.  On April 13, 2009, after the investigation and proceeding concluded, Reed was honorably discharged from active duty and placed back on reserve status.  Compl. ¶ 3; Def.'s Mot. Summ. J. Ex. N at 2.  Reed contacted Lt. Boyd on or about April 18, 2009 to inform him of his release from duty and intent to return to work on Friday, April 20, 2009.  Pl.'s Resp. 4.  However, Cpt. Greg Whitaker, an internal affairs representative for City, informed Reed that he was placed on administrative leave without pay pending an internal investigation.  Compl. ¶ 4; Reed Dep. 189:13-22.  Then, on April 23, 2009, Reed received a letter from Chief Mullen stating that he was reinstated effective April 24, 2009.  This letter states:

> Dear Officer Reed:
>
> You have informed the City that you have been released from your military duty, and that you wish to return to work.  This is to confirm that you are reinstated to your former position and current rank as a police officer, effective immediately.
>
> Your first day of duty will be Friday, April 24, 2009.  Because you have asked that your first day of work be Monday, April 20, 2009 (four days earlier) you will be placed in a pay status as of that date and paid as though you worked your regular hours on Monday thru Thursday.
>
> It is anticipated that you will be assigned back to the Operations Bureau.  Upon your arrival on Friday, please report to Captain Whitaker.

Def.'s Mot. Summ. J. Ex. H.

The parties agree that Reed was reemployed by City.  Reed alleges that despite his reemployment, he was never returned to his previous duties as a police officer in his patrol division, Team 1, and that his service weapon, SLED card, City badge, and ID card were not returned to him.  Compl. ¶ 5; Pl.'s Resp. 5.  As directed, upon his return Reed reported to Cpt. Whitaker regarding the internal investigation.  Reed was then interviewed by Lt. Anita Craven of Internal Affairs for the first of two transcribed

interviews.  Pl.'s Resp. 5.  Reed signed a *Garrity* warning, which informed Reed of the

allegations against him and the consequences of failing to provide truthful answers.[2]

Lt. Craven asked Reed about the allegations that he had yelled at and pointed a

firearm at service members, and threatened a service member with a knife.  Reed

responded that these allegations were "unsubstantiated" and "dismissed" by the Navy.

Def.'s Mot. Summ. J. Ex. J. at 1:18-2:5 (stating that the first alleged incident of pointing

a rifle at service members and yelling at them "never occurred"); id. at 11:4-8 (claiming

that allegation of rifle pointing and yelling was "dismissed" at the NJP); id. at 17:1-12

---

[2] The *Garrity* warning stated in part:

> You are about to be questioned or asked to write a statement as part of a Charleston Police Department administrative and/or complaint investigation.

> Allegation:

> That while you were on leave from the Charleston Police Department we received an allegation that you engaged in various acts of misconduct, to include pointing a rifle or similar weapon at some individuals and assaulting or threatening to assault an individual with a knife or similar weapon, and making disparaging comments about a woman's weight or pregnancy status.  Because those allegations relate directly and are relevant to your fitness for duty as a police officer, we are conducting a due diligence review of those actions to confirm your fitness for duty.

> Since this is an administrative investigation, neither your statements nor any information or evidence that is gained as a result of such statements can be used against you in any subsequent criminal proceeding.  However, these statements may be used against you in subsequent administrative actions.

> You are being ordered to answer questions specifically, directly, and narrowly related to the performance of your official duties and/or your conduct as related to your employment with the Department.

> You are hereby notified that if you refuse to answer questions relating to this specific investigation or if you should be untruthful in answering those questions, you will be subject to Department charges that could result in disciplinary action up to and including dismissal from the Department.

Def.'s Mot. Summ. J. Ex. I.

(stating that an investigation was conducted into the second allegation for assault by pointing a knife and making threats but claiming that the charge was dismissed); id. at 40:20-41:1 (claiming that he was cleared of these two allegations with no disciplinary action). Reed admitted that he had been found guilty of making derogatory comment about a female service member and for committing the boots violation. See id. at 22:11, 27:6-8.

Lt. Craven interviewed Reed for the second time on May 1, 2009. Reed again admitted to his guilty finding for the derogatory comment about a female service member and boots violation but denied being found guilty of charges involving the firearm and knife. Pl.'s Resp. 5; Def.'s Mem. Supp. 15. Near the end of the interview, Lt. Craven informed Reed that City had procured his NJP file, which reflected that Reed was also found guilty of the assault charges for pointing a rifle and pointing a knife. Def.'s Mot. Summ. J. Ex. M at 26:22. Reed stated "I don't know" when asked why the NJP records reflected that he was found guilty of these charges. Id. at 27:1-4. Reed explained that the documents he was given by the Navy did not list guilty findings for these charges. Id. at 27:4-15.

During the interviews, Reed provided Lt. Craven with documentation regarding the Navy investigation and charges. Pl.'s Resp. 5. Reed asserts that he provided Lt. Craven with all of the documents he was given by the Navy and that none of these documents denote a guilty finding for pointing a firearm or knife at service members. Pl.'s Resp. 6; Reed Dep. 3:8-11.

After the second interview, Reed claims that Lt. Craven stopped the recording and told him, "[I]t doesn't look good for you, Timmy, it doesn't look good," and, "I would

hate to be out of work in a bad economy."  Compl. ¶ 6; Reed Dep. 214:10-23.  Reed also alleges that at a prior meeting, he asked Lt. Craven what was going to happen to his job, to which Lt. Craven responded, "[I]t doesn't look good to me, it doesn't look good."  Reed Dep. 201:11-15.

On or about May 4, 2009, Reed was advised by City of a change in his administrative leave status from paid to unpaid leave.  Compl. ¶ 5; Pl.'s Resp. 7.  On May 5, 2009, Lt. Craven completed a report that summarized her interviews of Reed and the information he gave that was inconsistent with the formal NJP records.  Def.'s Mot. Summ. J. Ex. N.

Reed alleges that around this time he began to fear that if he were terminated, he would lose his police officer certification and be unable to find another job in law enforcement.  Pl.'s Resp. 7.  On Friday, May 8, 2009, Reed met with Lt. Boyd and submitted a letter of resignation.  Reed Dep. 222:4-17.  Reed claims that Lt. Boyd offered to "hold this in my safe until Monday morning, if you call me before 9:00 a.m., I will take it and shred it, this is something between you and I, I won't disclose the information to anybody else."  Id. at 223:9-15.  Reed then received a call on Monday, May 11, 2009 from Cpt. Whitaker, who advised Reed that Chief Mullen had accepted his letter of resignation.  Id. at 224:1-13.  Reed met with Cpt. Whitaker and Lt. Craven and asked them to withdraw his letter of resignation, but Cpt. Whitaker responded that this was not possible because Chief Mullen had already accepted the letter.  Id. at 224:21-226-19.

Reed's termination became effective on May 11, 2009.  At this time, City's internal investigation was not yet completed.  City's Disposition Form dated May 21, 2009 lists the following complaints against Reed by the Office of Professional Standards:

"It is alleged that PO Reed was not truthful in answering specific questions relating to the NJP and that he hindered the investigation by refusing to sign a waiver which would have expedited the release of military documents relating to the NJP." Def.'s Mot. Summ. J. Ex. Q at 2. The "Disposition" section was marked "Sustained – Sufficient evidence to prove the allegation," but the "Action Taken" space was left blank but for a notation by Chief Mullen that "Employee resigned during investigation." Id.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255.

## III.   DISCUSSION

USERRA prohibits discrimination against persons based on of their service in the uniformed services. It was enacted to protect the rights of veterans and members of the military services and must be broadly construed in their favor. See Hill v. Michelin N. Am., 252 F.3d 307, 312-13 (4th Cir. 2001). USERRA specifically protects current and former military service members by prohibiting discriminatory acts by employers where

military status is a motivating favor in an employment action, even if it is not the sole basis for the decision.  Id. at 312.  This protection extends to initial employment, reemployment, and retention in employment.  Id. at 311.

Here, Reed makes two claims under USERRA:  (1) that City discriminated against him in violation of 38 U.S.C. § 4311(a); and (2) that he was unlawfully discharged in violation of 38 U.S.C. § 4316(c).[3]

## A.  REED'S DISCRIMINATION CLAIM

Reed first alleges that City unlawfully discriminated against him in violation of § 4311(a) by treating him differently upon reemployment.  Before analyzing this claim, a summary of the applicable legal framework is warranted.

First, § 4312 governs employees' right to reemployment upon return from service.  Under § 4312(a), "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits [of USERRA]."  This section "'places service people and employers on notice that, upon returning from service, veterans are entitled to their previous positions of employment.'"  Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 302 (4th Cir. 2006) (quoting Jordan v. Air Prods. & Chems., Inc., 225 F. Supp. 2d 1206, 1208 (C.D. Cal. 2002)).  However, it "only entitles a service person to immediate reemployment and does not prevent the employer from terminating him the next day or even later the same day."  Id.  Thus, the Fourth Circuit in Francis held that "§ 4312 applies to protect a covered individual only as to the act of rehiring."  Id.

---

[3] In his complaint, Reed also made a claim for unlawful retaliation, but he has since withdrawn that claim.

The "apparent harshness" that an employee's protection under § 4312 culminates upon the instant of reemployment is allayed by the fact that the employee's protections under § 4311 commence at that time.  Id.  Section 4311(a) prohibits discrimination once an employee is rehired.  Under § 4311(a), a "person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment on the basis of that membership."  Thus, § 4311(a) prohibits discrimination with respect to any benefit of employment against persons who serve in the uniformed services after they return from a deployment and are reemployed.  Francis, 452 F.3d at 304.  In sum, "§ 4312 requires an employer to rehire covered employees; § 4311 then operates to prevent employers from treating those employees differently after they are rehired."  Id.

Reed concedes that he was reemployed with City.  Pl.'s Resp. 10 n.4.  He agrees with City that his claim relating to differential treatment after he was rehired "is properly analyzed under § 4311(a)" rather than under § 4312.  Id. at 10.  Therefore, Reed has the burden of showing he was denied a benefit of employment and that his Navy Reserve service was a "motivating factor" in the actions taken by City following reemployment.

### 1.   Whether Reed was Denied a Benefit of Employment

Reed first argues that he was not returned to his former job upon reemployment, thus he was deprived of a benefit of employment.  He specifically alleges that he was "never returned to his position with Team 1, patrol division, the position in which he would have remained but for his military leave," but was instead told to report to Internal

Affairs, never reissued his service weapon or badge, and had his identification cards confiscated.  Pl.'s Resp. 10-11.[4]

These allegations are sufficient to create a genuine issue of material fact as to whether Reed was deprived of a "benefit of employment."  See 38 U.S.C. § 4303(2) (defining "benefit of employment" as "any advantage, profit, privilege, gain, status, account, or interest" arising from an employment contract); Harris v. City of Montgomery, 322 F. Supp. 2d 1319, 1323 (M.D. Ala. 2004) (noting that a significant change in job responsibilities, even when pay and title remain the same, can create a jury question as to whether a "benefit of employment" has been denied).

## 2.  Whether Reed's Service Was a Motivating Factor

Section 4311(c)(1) additionally requires Reed to show that his membership in the Navy Reserve was a "motivating factor" in the post-reemployment actions taken by City. See Francis, 452 F.3d at 306 ("[A]n employer shall be considered to have engaged in prohibited conduct under § 4311(a) only if the employee's military status is a 'motivating factor.'").  Reed cannot meet this burden because he testified that he believed City was motivated not by his active duty service but instead by the allegations of misconduct that arose during his service.[5]  This testimony is consistent with City's claim that it was

---

[4] In addition to the alleged restrictions listed above, when Reed was put on administrative leave, he was prohibited from operating a City of Charleston vehicle, conducting any law enforcement activities, executing any police powers, or working any off-duty assignments related to law enforcement.  See Def.'s Mot. Summ. J. Ex. O.

[5] Reed testified as follows:

> Q:    Is it your contention that the motivating factor in the City
>       treating you the way you claim it did upon your return from
>       active duty was because of the information it received
>       about the captain's mast and the alleged misconduct?
> A:    Yes.

motivated to conduct an internal investigation by the allegations of misconduct.  It is also

consistent with circumstantial evidence, such as the fact that after Reed's three prior

deployments, he was promptly reinstated as a police officer with City.

Even if the court looked past Reed's testimony, his arguments regarding unlawful

motive are without merit.  First, Reed attempts to demonstrate unlawful motive based on

the temporal proximity between his return from active duty and his placement on

administrative leave by City.  Reed alleges that despite being notified of the allegations

of misconduct in February 2009, City "did not choose to place Plaintiff on administrative

leave . . . until immediately after his return from deployment."  Pl.'s Resp. 11.  "Such

evidence," Reed argues, "can inferentially show that it was actually Plaintiff's military

leave which was a motivating factor in the Defendant not placing him back into his

former position."  Id.

Although courts have considered proximity in time between the employee's

service activity and the adverse employment action as one piece of circumstantial

evidence in favor of a finding of unlawful motive, see Sheehan v. Dep't of Navy, 240

F.3d 1009, 1014 (Fed. Cir. 2001), at least one court has found proximity in time *alone* to

---

| Q: | You don't believe, sitting here today, that the motivating factor for anything the City did or didn't do when you returned from active duty in April 2009 was simply based on the fact you had served another period of time on active duty in the Navy, do you? |
| A: | No, sir. |
| | . . . |
| Q: | You don't believe that the City took any action against you or failed to take any action that it should have and referred to you simply because you were a member of the United States Navy, do you? |
| A: | No, sir. |

Reed Dep. 294:16-296:18.

be insufficient.  See Vega-Colon v. Wyeth Pharms., 625 F.3d 22, 29 (10th Cir. 2010).

Moreover, City explains that it would have been impractical to place Reed on

administrative leave when it first learned of the allegations of misconduct because Reed

was already on military leave, he was stationed across the country, and there was no way

for City to conduct its own investigation into the Navy's accusations against him until he

returned from service.  The Department of Labor Regulations governing USERRA

specifically authorize an employer to initiate a disciplinary review upon reemployment

based on conduct discovered prior to reemployment.  See 70 F.R. 75246-01, at *75271

(Dec. 19, 2005).[6]  Therefore, Reed's temporal proximity argument fails.

    Second, Reed relies on a Sixth Circuit decision, Petty v. Metro. Gov't of

Nashville-Davidson Cty., 538 F.3d 431 (6th Cir. 2008), to support his claim of improper

motive.  Reed cites Petty for the proposition that an employer may not institute policies

or procedures that limit the rights of USERRA-protected employees by adding

"prerequisites" to reemployment.  In that case, a police officer, Petty, took leave for

active duty service in the military, and, while deployed, was charged with misconduct.

Petty resigned his commission and the Army dismissed the charges.  When Petty

submitted his request for reemployment, the employer subjected him to a three-week

---

[6] The Regulations provide:

> [I]n the event that the employer discovers conduct prior to reemployment that
> may subject the returning service member to disciplinary review upon
> reemployment, . . . the employer may resume the disciplinary review upon
> reemployment at the point at which it was left at the time of the onset of military
> service, or *may initiate such review based on conduct discovered prior to
> reemployment*. . . .  [T]he Department recognizes that there may be some
> instances in which the returning employee may be legitimately subject to an
> employer's disciplinary review following reemployment.

70 F.R. 75246-01, at *75271.

evaluation process.  The court found that this "prerequisite" to reemployment violated 38 U.S.C. § 4312, the provision of USERRA governing reemployment obligations.  Here, Reed concedes that he was reemployed by City and that his discrimination claim must proceed under § 4311, *not* § 4312.  Therefore, his reliance on Petty for the argument that City's practice of subjecting him to an internal affairs investigation was an unlawful "prerequisite" to employment is without merit.

In conclusion, Reed has not raised a genuine issue of material fact from which this court could infer that City's post-reemployment actions were motivated by Reed's active duty service in the Navy.  To the contrary, Reed testified that he believed City's actions were motivated by the Navy's allegations of misconduct.  In addition, Reed's arguments based on temporal proximity and the Petty decision are unsupported by the evidence in this case.  The Fourth Circuit has held that "'[m]ere conclusory allegations of motivation do not preclude summary judgment.'"  Francis, 452 F.3d at 307 (quoting Yarnevic v. Brink's, Inc., 102 F.3d 753, 757-58 (4th Cir. 1996)).  Therefore, the court grants summary judgment in favor of City on Reed's discrimination claim.[7]

---

[7] Even if Reed carried his burden on the "motivating factor" element, City could still show under § 4311(c)(1) that the same actions would have been taken in the absence of Reed's uniformed service.  See Hill, 252 F.3d at 312 (quoting 38 U.S.C. § 4311(c)(1)) ("If the employee establishes that his military status was a motivating factor in the employer's decision, USERRA then shifts the burden of proof to the employer, allowing the employer to avoid liability only if 'the employer can prove that the action would have been taken in the absence of' the employee's military status.").  Chief Mullen testified that if Reed had not been on military leave when the allegations arose that he had improperly pointed a weapon at someone, Reed still would have been removed from his assigned post and forced to comply with an internal investigation.  Mullen Dep. 87:3-88:7.  In effect, City argues that an internal investigation is City's standard operating procedure whenever an officer is under investigation for serious misconduct.  Reed has not contested this testimony or made an argument in opposition; therefore, he has failed to create a genuine issue of material fact for trial.  See Robinson v. Morris Moore Chevrolet-Buick, Inc., 974 F. Supp. 571, 578 (E.D. Tex. 1997) (explaining that an employer whose employment decision was motivated in part by an employee's military status is still entitled to summary judgment if the employer can prove that the permissible reason for its employment decision, "standing alone, would have induced it to make the same decision").

## B.  REED'S IMPROPER DISCHARGE CLAIM

Next, Reed alleges that he was improperly discharged in violation of § 4316 of USERRA.  Section 4316(c) states, "A person who is reemployed by an employer under [USERRA] shall not be discharged from such employment, except for cause."  This section "temporarily changes the at-will employment status of returning veterans." Francis, 452 F.3d at 308.  For a certain period of time, which depends on the veteran's length of military service, an employer cannot discharge the returning veteran "except for cause."  Id.  In sum, § 4316 "prevents employers from summarily dismissing those employees for a limited period after they are rehired."  Id.

Reed argues that he was forced to resign by City, which in effect resulted in a constructive discharge that was not "for cause."[8]

### 1.  Whether Reed Was Constructively Discharged

First, Reed alleges that he was forced to resign such that he was constructively discharged.  Compl. ¶ 9.  "Depending on the circumstances, even resignation from a reemployment position can be a discharge within the scope of § 4316(c)."  USERRA Manual § 6:6.  In the Fourth Circuit, "an employee is constructively discharged 'if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit.'"  Whitten v. Fred's, Inc., 601 F.3d 231, 248 (4th Cir. 2010) (quoting Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995)).  A constructive discharge plaintiff must therefore "allege and prove two

---

[8] Although Reed submitted a letter of resignation to City, he also argues that he did not actually resign.  Pl.'s Resp. 12.  Because the court finds below that Reed has created a genuine issue of material fact on his claim for constructive discharge without case, it is unnecessary to reach this argument.  As such, this issue is preserved for jury determination.

elements:  (1) deliberateness of the employer's actions and (2) intolerability of the working conditions."[9] <u>Martin</u>, 48 F.3d at 1354.

To prove deliberateness, Reed must show that "the actions complained of were intended by the employer as an effort to force the employee to quit."  <u>Whitten</u>, 601 F.3d at 248 (internal quotation marks omitted).  Next, "[w]hether an employment environment is intolerable is determined from the objective of a reasonable person."  <u>Heiko v. Colombo Savings Bank, F.S.B.</u>, 434 F.3d 249, 262 (4th Cir. 2006).  "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."  <u>Id.</u>

Reed alleges that City did not restore him to his former job position but instead made him report to internal affairs, which caused concern that he would be terminated, lose his law enforcement certification, and not be able to find another job.  City responds that these complaints are insufficient to render Reed's situation "intolerable" because police officers are routinely required to undergo investigations.  Viewing the evidence in the light most favorable to Reed, the court finds that Reed has established a genuine issue of material fact on this issue of constructive discharge.  Between April 24, 2009, Reed's date of reemployment, and May 11, 2009, the date his resignation became effective, Reed was never returned to his ordinary work duties; instead, he was under investigation the entire time.  While the motivation behind this investigation was lawful, during this time Reed's employment status was allegedly changed from administrative leave with pay to administrative leave without pay, which Reed claims caused fear that termination was

---

[9] Courts in other Circuits confronted with USERRA claims for constructive discharge have applied a similar standard.  <u>See</u> <u>Serricchio v. Wachovia Securities LLC</u>, 658 F.3d 169, 185 (2d Cir. 2011); <u>Wallace v. City of San Diego</u>, 479 F.3d 616, 625-26 (9th Cir. 2007).

inevitable.  According to Reed, he was discouraged from visiting the premises of the

Charleston Police Department and City asked him to meet at a shopping mall rather than

the station to deliver letters regarding his administrative leave status.  Compl. ¶ 5.  While

on leave, Reed was prohibited from operating a City of Charleston vehicle, conducting

any law enforcement activities, and working any off-duty assignments related to law

enforcement.  Def.'s Mot. Summ. J. Ex. O.

Reed further alleges that Lt. Craven remarked on two occasions regarding his

prospects of future employment that, "It doesn't look good for you, it doesn't look good."

He also alleges that he asked Mr. Bourdon what was going to happen to his job, and Mr.

Bourdon said something similar to, "[I]t just depends on what the Navy does, however,

the Chief [doesn't] want you being vindictive toward any military people."  Reed Dep.

130:16-24.  According to Reed, both Cpt. Whitaker and Lt. Craven testified that if they

had to make a recommendation, they would have recommended Reed's termination.  In

fact, although the Administrative Action Form was not completed by Chief Mullen, the

Disposition box was marked "Sustained – Sufficient evidence to prove the allegation."

Def.'s Mot. Summ. J. Ex. Q.

Based on this evidence, Reed has generated genuine issues of material fact as to

whether City's actions were intended as an effort to force him to quit, and whether the

employment environment was intolerable as determined from the objective of a

reasonable person.  See Wallace v. City of San Diego, 479 F.3d 616, 626 (9th Cir. 2007)

(internal quotation marks omitted) ("Whether working conditions were so intolerable and

discriminatory as to justify a reasonable employee's decision to resign is normally a

factual question for the jury.").

## 2.   Whether Reed Was Discharged "For Cause"

City responds that even if Reed was constructively discharged, the discharge was "for cause."  In an improper discharge action, the "employer bears the burden of proving that it is reasonable to discharge the employee for the conduct in question, and that he or she had notice, which was express or can be fairly implied, that the conduct would constitute cause for discharge."  20 C.F.R. § 1002.248(a).  "Cause in the USERRA context refers to any reason for discharge that is not arbitrary or made in order to avoid the statute's requirement that military service members not be discharged because of their protected military service."  Johnson v. Preston Cycles, LLC, No. 08-0177, 2008 WL 4908191, at *1 (D.S.C. Nov. 13, 2008).

City argues that, if it did discharge Reed, the discharge was "for cause" because Reed gave untruthful information to City during his internal investigation.  Reed disputes this assertion, asserting that he did not provide false information, but instead provided the complete information that was given to him by the Navy—that he was only found guilty of a boots violation and for making a disparaging remark about a female service member.  Viewing the evidence in the light most favorable to Reed, there is a genuine issue of material fact as to whether Reed was discharged "for cause," if a jury were to find that he was constructively discharged.[10]  See id. at *2 ("If a jury were to credit Plaintiff's evidence, it could find that the termination was not 'for cause' as contemplated by

---

[10] The court does note that in addition to the employer's burden of proving it was reasonable to discharge the employee for the conduct in question, the employer must also show that the employee had "notice . . . that the conduct would constitute cause for discharge."  20 C.F.R. § 1002.248(a).  It seems that City has shown that notice was given because before each of the two interviews conducted by Lt. Craven, Reed was given a *Garrity* warning, which notified Reed that his statements could be used against him in subsequent administrative actions, and that "if you should be untruthful in answering those questions, you will be subject to Department charges that could result in disciplinary action up to and including dismissal from the Department."  Reed signed these warnings.  See Def.'s Mot. Summ. J. Ex. I.

USERRA.").  The Fourth Circuit has plainly stated, "Because employers have the burden of proving that a discharge was reasonable, it is often difficult to achieve summary judgment on claims under § 4316(c)."  <u>Francis</u>, 452 F.3d at 308.

For these reasons, the court denies summary judgment on Reed's improper discharge claim under § 4316(c).

### IV.   CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** defendant's motion for summary judgment as to plaintiff's discrimination claim under 38 U.S.C. § 4311(a), but **DENIES IN PART** the motion as to plaintiff's unlawful discharge claim under 38 U.S.C. § 4316(c).

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**May 25, 2012
Charleston, South Carolina**